IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHARLOTTA J. MANNS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15-CV-133 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Plaintiff, Charlotta J. Manns, seeks judicial review of a final decision of the defendant, the Commissioner of Social Security, denying Ms. Manns' claims for disability and supplemental income benefits under the Social Security Act. Because the Administrative Law Judge did a completely inadequate job of analyzing the medical records and explaining her decision, the case must be remanded.

**I.  PROCEDURAL HISTORY**

Ms. Manns applied for benefits on March 29, 2011, alleging a 2009 disability onset date. (Tr. at 180-89.) The applications were denied initially and upon reconsideration. (Tr. at 76-145.) After a hearing before an Administrative Law Judge, (Tr. at 35-71), the ALJ denied disability benefits. (Tr. at 11-29.) The Appeals Council denied review, (Tr. at 3-8), making the ALJ's determination the final decision of the Commissioner for purposes of judicial review.

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). "[T]he scope of [the court's] review of [such an administrative] decision . . . is extremely limited." *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). "[A] reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted). The issue before this Court "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

## III. THE ALJ'S DECISION

The ALJ here applied the well-established five-step process used to evaluate disability claims. *See Hancock*, 667 F.3d at 472. The ALJ found at step one that Ms. Manns had not engaged in "substantial gainful activity" since her alleged onset date. (Tr. at 16.) At step two, the ALJ determined that Ms. Manns suffered from five severe impairments: fibromyalgia syndrome, polyarthralgias, dysthymia and major depressive disorder due to chronic pain, panic disorder, obesity, and bipolar II disorder. (*Id.*) The ALJ found at step three that none of these impairments met or equaled a disability listing.

2

(Tr. at 17.)[1]  Accordingly, the ALJ assessed Ms. Manns' residual functional capacity ("RFC") and determined that she could perform less than the full range of light work with a number of physical limitations.

As is relevant here, the ALJ found "[s]he has the mental residual functional capacity to perform simple, routine, and repetitive tasks; she should be limited to low-stress work with only occasional decision-making requirements, occasional changes in the work setting, and no work at a set production rate or pace.  She can have occasional interactions with the public but frequent interactions with supervisors and coworkers."  (Tr. at 18.) Applying this RFC, the ALJ determined at step four that Ms. Manns could not perform her past relevant work as a certified nursing assistant ("CNA") or a companion.  (Tr. at 27.) After considering the testimony of the VE and Ms. Manns' age, education, work experience, and RFC, the ALJ concluded at step five that jobs existed in significant numbers in the national economy that Ms. Manns could have performed.  (Tr. at 28-29.) Accordingly, the ALJ decided that Ms. Manns was not under a "disability," as defined in the Act, at any relevant time.  (Tr. at 29.)

## IV.   CONTENTIONS

Ms. Manns raises three issues on judicial review.  First, Ms. Manns maintains that the ALJ's mental RFC finding, which included a limitation to "simple, routine, repetitive

---

[1] The ALJ's reference to Listing 12.08 appears to be a typographical error. (*See* Tr. at 17.) In light of the ALJ's finding that Ms. Manns had severe panic disorder, (*see* Tr. at 16), it is likely the ALJ meant to reference Listing 12.06 (Anxiety Disorders).

3

tasks," (*see* Tr. at 18), violated *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), because it did not sufficiently account for Ms. Manns' moderate limitations in concentration, persistence, or pace. (Pl.'s Br. [Doc. 11] at 3-11.) Second, Ms. Manns argues that the ALJ erred by "fail[ing] to analyze the opinion[s] of Ms. Manns' treating [psychiatrist Dr. Adam Carlton McDonough] in accordance with 20 C.F.R. § 404.1527 and prevailing Fourth Circuit precedent." (*Id.* at 11.) Third, Ms. Manns claims that the ALJ erred by failing to rule on Ms. Manns' objections to the Vocational Expert's testimony. (*Id.* at 18.)

## V. DISCUSSION

### A. Mental RFC

Ms. Manns challenges the sufficiency of the ALJ's decision on mental RFC. (*Id.* at 3-11.) Her arguments have merit.

SSR 96–8p provides that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at *1. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p at *1. Although *Mascio* declined to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," remand "may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform *relevant* functions, despite contradictory evidence in the record, or where other inadequacies in the

4

ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the record is replete with evidence that Ms. Manns' mental impairments caused significant limitations on her ability to concentrate; thus, that concentration was a relevant mental work-related function warranting express consideration by the ALJ under SSR 96-8p and *Mascio*. For example, Ms. Manns' treating psychiatrist Dr. McDonough opined that Ms. Manns' bipolar disorder resulted in "marked" deficiencies in concentration, persistence, and pace, (Tr. at 451), and both state agency consultants found "moderate" limitations in Ms. Manns' ability to maintain attention and concentration for extended periods. (Tr. at 95, 109.) Further, a Social Security Administration field office employee noted during an interview with Ms. Manns that she displayed noticeable problems concentrating, talking, and answering, (Tr. at 218), and Ms. Manns consistently complained of difficulty concentrating in her subjective reports to her mental health care providers. (*See, e.g.*, Tr. at 298, 429.)

In the face of this evidence, the ALJ's consideration of Ms. Manns' ability to concentrate falls considerably short. At step three, although the ALJ found that Ms. Manns had moderate limitation in concentration, persistence, or pace, the ALJ supplied *no* analysis to support that finding or to justify a moderate limitation as opposed to a marked limitation as found by Dr. McDonough. (*See* Tr. at 17.) Compounding that step three analytical omission, in formulating the RFC the ALJ failed *entirely* to discuss Ms. Manns'

5

ability to maintain attention and concentration. (*See* Tr. 18-27.)[2] As a result, the ALJ here "fail[ed] to assess [Ms. Manns'] capacity to perform [a] relevant function[], despite contradictory evidence in the record," and this failure "frustrate[s] meaningful review" of the ALJ's reasoning with regard to Ms. Manns' ability to maintain concentration. *Mascio*, 780 F.3d at 636.

The ALJ may be able to justify how the mental RFC she found adequately encompasses Ms. Manns' undisputed limitations in concentration, persistence, or pace. She has not, however, done so or even attempted to do so. *Mascio* requires remand. *See Franklin v. Colvin*, No. 5:14-cv-00084, 2015 WL 4510238, at *2 (W.D.N.C. July 24, 2015) (unpublished) (holding that under *Mascio*, "the ALJ must directly explain" how he accounted for the claimant's moderate limitations in concentration, persistence, and pace in determining the claimant's RFC, "such that the court may properly review the ALJ's analysis.")

### B. Opinions of Treating Psychiatrist Dr. McDonough

Ms. Manns next argues that the ALJ failed to analyze the opinions of her treating psychiatrist, Dr. McDonough. This argument also has merit.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment.

---

[2] The ALJ also erroneously failed to discuss the state agency consultants' opinions when determining Ms. Manns' RFC. (*See* Tr. 18-27); *see also* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of the treatment relationship appreciably tempers the weight an ALJ affords an opinion. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. *See* 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

On August 7, 2013, Dr. McDonough completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) and a "Depression and Anxiety Questionnaire" based on his psychiatric treatment of Ms. Manns. (Tr. at 446-52.) Dr. McDonough found slight restriction in Ms. Manns' ability to handle simple and detailed instructions and make simple, work-related decisions, and marked restriction in her ability to interact with others and respond to work pressures and changes. (Tr. at 446-47.) In

7

support of those restrictions, Dr. McDonough indicated that Ms. Manns suffered from bipolar disorder II with periodic depression; decreased sleep, energy, concentration, patience, tact, judgment, and frustration tolerance; and increased impulsivity, irritability, and hostility. (Tr. at 447.) Dr. McDonough further opined that Ms. Manns' "chronic medical comorbidity contribute[d] to frequency [and] severity of [mental] dysfunction." (*Id.*) Dr. McDonough catalogued Ms. Manns' mental symptomatology and indicated that her mental impairments were of listing-level severity, by finding that she had moderate limitation in activities of daily living, extreme limitation in social functioning, marked limitation in concentration, persistence, or pace, and extreme episodes of deterioration or decompensation. (Tr. at 451.)

> The sum total of the ALJ's analysis of Dr. McDonough's opinions follows:
>
> [A]lthough [Ms. Manns'] Psychiatrists at Wake Forest determined [her] to have marked and extreme limitations, there [sic] reports indicated they have only treated [Ms. Manns] for medication management and brief discussions. [Ms. Manns] has not attended counseling or mental health therapy. She has declined psychiatric counseling and has only sought narcotics to treat her anxiety and depression.

(Tr. at 27.) This "analysis" of Dr. McDonough's opinions falls far short of the regulatory requirements for consideration of treating source opinions, is factually incorrect and legally insufficient, and is inadequate for judicial review.

The ALJ's finding that Dr. McDonough "*only* treated [Ms. Manns] for medication management and *brief* discussions," (Tr. at 27 (emphasis added)), lacks support in the record. The record reflects without dispute that Dr. McDonough (and other psychiatrists

8

at the same facility working in consultation with him) treated Ms. Manns on 12 occasions between January 2012 and June 2013. (Tr. at 345-73.) None of these treatment records indicates the *duration* of the office visits and thus the ALJ's characterization of the discussions at these visits as "brief" is not supported by the record. (*See id.*) The ALJ's use of the word "only" to describe "medication management," (Tr. at 27), inappropriately minimizes the significant degree of medical treatment Ms. Manns underwent in an attempt to get her mental symptoms under control. Dr. McDonough and his psychiatric colleagues tried Ms. Manns on no fewer than 12 different psychotropic medications at varying doses during this 18-month period, with only limited success in controlling Ms. Manns' multiple symptoms. (*See* Tr. at 345-73).[3] Finally, the fact that Ms. Manns has not sought counseling or psychotherapy with other providers has little if any relevance to the consistency or supportability of Dr. McDonough's opinions.

Moreover, the ALJ wholly failed to analyze Dr. McDonough's opinions under the factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c) or to even indicate the specific weight she assigned to those opinions. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nor did the ALJ discuss or even mention Dr. McDonough's "specialty as a psychiatrist, his longitudinal, consistent treating relationship with Ms. Manns, [or] the nature and extent of his treatment." (Pl.'s Br. [Doc. 11] at 13.)

---

[3] Moreover, the ALJ erred in finding that Ms. Manns "only sought *narcotics* to treat her anxiety and depression." (Tr. at 27 (emphasis added).) The medications Dr. McDonough and his colleagues prescribed Ms. Manns are not narcotics, but rather anti-depressants, anti-anxiety medications, mood stabilizers, and sleep aids.

9

The ALJ followed her "analysis" with another paragraph which the parties generously interpret as containing findings that Dr. McDonough's opinions on the MSS and Questionnaire were not supported by clinical data and were contradicted by other information in his own records. (*See* Pl.'s Br. [Doc. 11] at 14; Def.'s Br. [Doc. 13] at 18.) The Court will not indulge in such a liberal construction of the ALJ's language, which constitutes a cut-and-paste job, not findings. Specifically, the ALJ wrote:

> A treating source is defined as the claimant's own physician who has provided the claimant with medical treatment and has an ongoing relationship with the claimant. The medical evidence must establish a frequency consistent with accepted medical practice for the type of treatment and evaluation required for the claimant's medical condition. Further, a treating physician's opinion may be disregarded if it is unsupported by the objective medical evidence or is merely conclusory. The Secretary [sic] may properly discount a treating physician's opinion which is not supported by clinical evidence. The opinion of a treating physician may be rejected if it is "so brief and conclusory that it lacks persuasive weight or when it is unsubstantiated by any clinical or laboratory findings. The Administrative Law Judge provided good cause for rejecting the treating physician's opinion since: 1) the doctor failed to provide clinical data or information to support his opinion; 2) this opinion was contradicted by other notations in his own records. An Administrative Law Judge can reject a treating physician's opinion where the rejection is based on record evidence contradicting the opinion. Social Security Ruling states, "Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."

Tr. at 27. This paragraph contains little more than generalized recitations of the standards governing evaluation of treating source opinions. It does not contain *any* specific analysis of Dr. McDonough's opinions or *any* citations to the record of facts to support a conclusion to discount those opinions. (*See* Tr. at 27.)

10

The only sentence which can possibly be read as containing a finding that Dr. McDonough's opinions were unsupported by clinical data and contradicted by his own records is particularly troubling. The ALJ referred to herself as "The Administrative Law Judge" rather than "the undersigned" as she had consistently done throughout the rest of the decision, used the past tense "provided," and referred to Dr. McDonough only as "the treating physician" and "the doctor," (Tr. at 27); taken together, the sentence reads more like a reviewing court's evaluation of an ALJ's decision, rather than her own attempt to lay out her reasoning for rejecting Dr. McDonough's opinions. Further, the ALJ indicated that "good cause" existed for rejecting "the treating physician's opinion"; however, "good cause" constitutes the standard for rejecting a treating source's opinion only in the Fifth and Eleventh Circuits. *See, e.g.*, *Avery v. Colvin*, 605 F. App'x 278, 283 (5th Cir. 2015); *Crow v. Commissioner, Soc. Sec. Admin.*, 571 F. App'x 802, 806 (11th Cir. 2014).

Under the applicable regulations, this does not suffice as reasons for rejecting the well-supported opinions of a treating physician. Remand is required.

### C. Objections to the VE's Testimony

The Court need not address this error, as it may not recur on remand.

## VI. CONCLUSION

While the Court appreciates that the ALJ included in her opinion a very detailed review of much of Ms. Manns' medical history, recitation is not analysis. In the absence

11

of a competent analysis of the evidence as it applies to Ms. Manns' mental residual functional capabilities, the case must be remanded.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **REVERSED**, and that this action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner is directed to remand the matter to the ALJ for further consideration of (1) Ms. Manns' mental RFC, including an express discussion of the impact on the RFC of her moderate limitations in concentration, persistence, or pace, in accordance with *Mascio*; and (2) the opinions of treating psychiatrist Dr. McDonough, including an explicit discussion of the weight assigned to such opinions and the reasons for such weight in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c).

To this extent, **IT IS FURTHER ORDERED** that Ms. Manns' Motion for Judgment Remanding the Cause for Hearing, (Doc. 10), is **GRANTED**, and that the Commissioner's Motion for Judgment on the Pleadings, (Doc. 12), is **DENIED**.

This the 5th day of October, 2015.

　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE